## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GESSY M. THEODORE**<br><br>**Plaintiff,**<br><br>v.<br><br>**NEWARK DEPARTMENT OF HEALTH AND COMMUNITY WELLNESS, et al.**<br><br>**Defendants.** | Civ. No. 2:19-17726 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this discrimination and retaliation suit by Plaintiff Gessy M. Theodore ("Plaintiff"), Defendants Newark Department of Health and Community Wellness ("NDH"), Mark Wade ("Wade"), and Michael Wilson ("Wilson") (collectively "Defendants"), move to dismiss the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 83. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendants' motion to dismiss is **granted in part and denied in part.**

## I.    BACKGROUND

A. Facts

At the time of the original complaint,[1] Plaintiff was a 62-year-old woman of Haitian decent. Third Amended Complaint ("TAC"), ¶ 16, ECF No. 80. She has worked at NDH as a health inspector since 1997 and claims to be the most senior Registered Environmental Health Specialist ("REHS") in her department. *Id.* at ¶15. Plaintiff alleges that since 2016, her direct supervisor, Wilson, who is an African-American man, has overseen a campaign of discrimination against her due to her age and national origin, including encouraging conflict between her and her African-American co-workers based on their false perception that she was speaking "Creole" in the office, *Id.* at ¶¶ 17-21, 25-27, 30-31. Plaintiff also accuses Wilson of creating a hostile work environment in retaliation for her opposition to his "attempts to control" and "dominate" the American Federation of State, County, and

---

[1] The facts of the initial Complaint are set forth in the Court's March 25, 2020 Opinion. ECF No. 17. Because Plaintiff has since amended her original Complaint, the Court includes a recitation of the facts contained in the currently operative Third Amended Complaint.

Municipal Employees, Council 52, AFL-CIO Local 2299 ("AFSCME" or "the Union") by "running for [a Union] office during the 2016 election." *Id.* at ¶¶ 21-23. Plaintiff also contends that Wilson denied her requests to take continuing education classes and prevented her from challenging disciplinary actions against her, learning about opportunities for promotion, and voting in union elections. *Id.* at ¶¶ 33, 51-52. Although Defendant Wade, the Director the NDH, was informed of Plaintiff's complaints in July and August 2017, neither he nor NDH investigated or corrected any of the unlawful conduct. *Id.* at ¶¶ 34, 35, 84-85.

On November 22, 2016, Plaintiff notified NDH in writing about the hostilities she faced based on her national origin and thereafter, Berlyne Vilcant and Martha Duque, two younger, less qualified inspectors were promoted over her. *Id.* at ¶¶ 32-33, 47. Plaintiff claims Ms. Vilcant was promoted to provisional Assistant Chief Inspector in 2016 and then to Health Officer for the City of Newark ("Newark") in September 2021. *Id.* at ¶¶ 41, 44. Plaintiff fails to specify what promotion Ms. Duque received. On or about March 1, 2018, Plaintiff surmises that because of her age, Wilson reassigned her from the predominantly Spanish speaking East Ward of Newark to a far smaller area under the pretext of a language barrier despite her fluency in Spanish. *Id.* at ¶¶ 17-18, 46.

Additionally, Plaintiff insists Wilson caused her to be expelled from the Union and prevented her from receiving money in the settlement of a 2015 state court action instituted by Plaintiff and 7 other inspectors against Newark ("State Court Action") over a salary dispute. *Id.* at ¶ 52. At the same time, Plaintiff avers that she refused to settle her claims believing that the settlement unfairly benefitted Defendant Choi Eng-Ferrell's ("Eng-Ferrell")[2] white husband at the expense of Plaintiff and the other plaintiffs who were all non-white. *Id.* at ¶ 56-58, 60-61. On August 7, 2017, Newark adopted a resolution approving the settlement of the State Court Action with the other 7 plaintiffs. *See id.* at ¶ 62. Additionally, Plaintiff claims that Wilson coerced the Union to assist him "in receiving a pre-litigation settlement ratified by the City of Newark on July 7, 2018 from what appears to be [settlement] funds set aside for Plaintiff." *Id.* at ¶¶ 52-53.

On March 2, 2018, Wilson tried to terminate Plaintiff for failing to attend two mandatory events scheduled between November 2017 and January 2018 while other non-non-Haitian inspectors who did not attend were not disciplined. *Id.* at ¶¶ 63-65, 91. The Union declined to represent Plaintiff during the subsequent May 31, 2018 disciplinary proceeding, which Plaintiff posits was due to Wilson's membership in the Union. *Id.* at ¶ 66, 69. Plaintiff's hearing was conducted before Eng-Ferrell, whom Plaintiff insists was not a neutral third party. *Id.* at ¶¶ 71, 73. As a result of the hearing, Plaintiff's termination was downgraded to a 60-day suspension. *Id.* at ¶¶ 74-75. Despite the reinstatement, Plaintiff contends that Wilson makes customers believe she no longer works for NDH and "continues to impose daily and hostile conditions upon Plaintiff's employment which have included verbal harassment, name calling, imposing responsibility for other employees' errors, and unequal pay and opportunity, and regular threats (nearly once a week as of the

---

[2] Eng-Ferrell is the Deputy Chief of Staff to the Mayor of Newark. TAC, ¶ 13.

filing of the original Complaint) that she will be disciplined for insubordination." *Id.* at ¶¶ 75-76.

B. Administrative Filings

On or about May 30, 2018, Plaintiff filed an Affirmative Action Complaint with the City of Newark. *Id.* at ¶ 67. On November 28, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* (Title VII"). *Id.* at ¶ 4, Ex. A. After NDH "failed to exercise its right to rebut Plaintiffs allegations," the EEOC issued a right to sue notice on June 17, 2019. *Id.* at ¶ 6, Ex. C.

On February 8, 2019, Plaintiff filed an Unfair Practice charge with the New Jersey Public Employment Relations Commission ("PERC") alleging, *inter alia,* the continued harm she faces due to the Union's failure to represent her in securing a wage adjustment and in the loss of pay resulting from a 30-day suspension that she has since appealed to the New Jersey Office of Administrative Law. *Id.* at ¶ 77.

C. Federal Action

Plaintiff initially filed this suit on September 6, 2019. ECF No. 1. Since then, Plaintiff has filed four motions to amend and Defendants have now filed six motions to dismiss. On August 13, 2020, Plaintiff voluntarily dismissed without prejudice her claims against the Union. ECF No. 46. Currently, the Third Amended Complaint contains five-counts in which Plaintiff alleges: 1) retaliation, hostile work environment, and discrimination based on age and national origin pursuant to 42 U.S.C. § 1983 for violation of 42 U.S.C. § 1981 by NDH; 2) discrimination based on race, language, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a), by NDH; 3) retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-3, by NDH; 4) discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD") by all Defendants; and 5) retaliation in violation of NJLAD by all Defendants.

In the present motion, Defendants move to dismiss arguing that this Court lacks subject matter jurisdiction pursuant to the New Jersey Employer-Employee Relations Act. Defendants also seek dismissal of the Third Amended Complaint based on principles of *res judicata*, collateral estoppel, and New Jersey's Entire Controversy Doctrine. Finally, Defendants assert that Plaintiff fails to state a claim upon which relief can be granted. Each contention will be addressed in turn.

## II.    DISCUSSION

A. Subject Matter Jurisdiction

This Court has federal question subject matter jurisdiction over Plaintiff's §1983 and Title VII claims, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the NJLAD claims, *see* U.S.C. § 1367. However, Defendant contends that this Court lacks subject matter jurisdiction because Plaintiff has failed to exhaust her state administration remedies by first filing a claim with PERC regarding her numerous allegations of unfair labor practices. Although Plaintiff states that she has filed an unfair practice charge with the PERC, Defendants argue that that PERC claim relates only to the Union's alleged failure to represent her following a 30-day suspension. TAC, ¶ 77.

"Under N.J. Stat. Ann. § 34:13A-5.2,[3] New Jersey's PERC has exclusive jurisdiction over all labor matters." *Peterson v. City of Long Branch, N.J.,* No. 08-3452, 2009 WL 749589, at *7 (D.N.J. March 19, 2009) (citing *Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30,* 290 F.3d 567, 578, n.21 (3d Cir. 2002)). This includes unfair employer practices such as discrimination,[4] but "PERC can only remedy discrimination regarding the exercise of rights guaranteed by the New Jersey Employer-Employee Relations Act ("EERA"), N.J.S.A. §§ 34:13A-1 to 13A-21." *Id.* at *9. Thus, PERC does not have exclusive jurisdiction over NJLAD and federal constitutional claims. *See Peterson,* 2009 WL 749589, at *9; *Clayton v. City of Atlantic City,* 722 F. Supp. 2d 581, n.7 (D.N.J. 2010). Moreover, "there is no general requirement that plaintiffs exhaust state administrative remedies before bringing a § 1983 action." *James v. Richman,* 547 F.3d 214, 217 (3d Cir. 2008); *Patsy v. Bd. Of Regents of Florida,* 457 U.S. 496, 516 (1982) ("we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing a state action pursuant to § 1983"). Thus, Defendants' motion to dismiss for lack of subject matter jurisdiction is **denied.**

B. Failure to State a Claim

A complaint survives a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the Plaintiff states a claim for relief that is "plausible on its face." *Bell Atlantic Corp. V. Twombly,* 550 U.S. 544, 547 (2007). The movant bears the burden of showing that no claim has been stated. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). Courts accept all factual allegations as true and draw "all inferences from the facts alleged in the light most favorable" to plaintiffs. *Phillips v. County of Allegheny,* 515 F.3d 224, 228 (3d Cir. 2008). But courts do not accept "legal conclusions" as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555).

---

[3] N.J.S.A. § 34:13A-5.2 states in pertinent part that PERC "shall make policy and establish rules and regulations concerning employer-employee relations in public employment relating to dispute settlement, grievance procedures and administration including enforcement of statutory provisions concerning representative elections and related matters and to implement fully all the provisions of this act."

[4] N.J.S.A. § 34:13A-5.4(a)(3) provides: "Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by this act."

1. *Res Judicata,* Collateral Estoppel, Entire Controversy Doctrine

*Res judicata* is a common-law doctrine that "provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." *Velasquez v. Franz*, 123 N.J. 498, 505 (1991). *Res judicata* precludes "'not only claims that were brought in a previous action, but also claims that could have been brought.'" *Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (citing *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks and citation omitted)). Under the Entire Controversy Doctrine, which is codified at New Jersey Rule of Court 4:30A and is essentially New Jersey's application of traditional res judicata principles, "'the adjudication of a legal controversy should occur in one litigation in only one court.'" *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997). (citing *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995)). "The primary consideration in determining if successive claims are part of the same controversy is whether the claims "'arise from related facts or from the same transaction or series of transactions.'" *Mason v. US Bank*, 2016 WL 7189828, at *4 (D.N.J. Dec. 12, 2016) (citing *DiTrolio,* 142 N.J. at 267).

The affirmative defense of collateral estoppel precludes parties from re-litigating issues where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" *Smith v. Borough of Dunmore*, 516 F. App'x 194, 199 (3d Cir. 2013) (internal cites omitted).

Defendants urge the Court to dismiss this entire matter based on res judicata, collateral estoppel, and the Entire Controversy Doctrine because 1) there was a final judgment in the State Court Action 2) involving the same parties, and that 3) many of her claims in this lawsuit either arise out of the same transaction or occurrence as her claim in the prior action or could have been raised in that action. Defendants are mistaken. While Plaintiff and the City of Newark were parties to an action in which there was a final judgment, the 2015 State Court Action arose out of a salary dispute between NDH and 8 REHS inspectors. Plaintiff's current claims, in contrast, are discrimination and retaliation claims arising out of instances of purported disparate treatment based on age and race including a settlement approved in 2017 that she argues unfairly benefitted the only white plaintiff. *See Peterson v. City of Long Branch, N.J.*, No. 08-3452, 2009 WL 749589, at *7 (D.N.J. Mar. 19, 2009) ("The [D]octrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action.") (citing *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 323)). The cause of action in this case does not arise from the same facts as the prior state action. Nor are the issues in a discrimination and retaliation claims the same as those in a wage dispute. Accordingly, Defendants' motion to dismiss on the basis of *res judicata,* collateral estoppel, and the Entire Controversy Doctrine is **denied.**

2. *42 U.S.C. § 1983 Claim for Violation of § 1981 Against NDH (First Cause of Action)*

In Count I, Plaintiff seeks to hold NDH liable under 42 U.S.C § 1983[5] for violations of 42 U.S.C. § 1981[6] by discriminating against her due to her race and national origin,[7] *see e.g.,* ¶ 81, 82, 86, 91, creating a hostile work environment due to her national origin, and retaliating against her for opposing Defendants' discriminatory conduct, *see e.g.,* ¶ 81, 82, 83, 94. These claims against NDH for municipal liability fail as a matter of law.

Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 736 (1989). To prevail on such a claim, a plaintiff "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent case." *Id.* Under *Monell*, liability against local governing bodies cannot be on a theory of respondeat superior, and instead attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). That is, municipal liability "must be founded upon evidence that the government unit itself supported a violation of" federal constitutional or statutory rights. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell*, 436 U.S. at 691-95). A plaintiff must demonstrate that through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. *Monell*, 436 U.S. at 689.

---

[5] 42 U.S.C. § 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .." Section 1983 "does not confer any substantive rights." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979)).

[6] 42 U.S.C. § 1981 provides equal rights "as is enjoyed by white citizens" to "all persons" to "make and enforce contracts," which is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

[7] To the extent that Plaintiff seeks remedy under §1983 for violations of §1981 based on national origin-based discrimination, *see* TAC ¶ 105, this Court has already noted that, "[s]ection 1981 prohibits discrimination on the basis of race, not solely on the basis of national origin. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)." March 25, 2020 Op. at 3; *Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) (affirming dismissal of §1981 gender discrimination claim because §1981, "on its face, is limited to issues of racial discrimination in the making and enforcing of contracts"); *see also Wesley v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 229 (D.N.J. 2014) ("a majority of courts in the Third Circuit have held that § 1981 does not apply to claims based on national origin discrimination.").

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (citing *Monell*, 436 U.S. at 690). "In either of these cases, it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Id.*

Here, Plaintiff characterizes Defendants Eng-Ferrell, Wilson, and Wade as "policy makers" for NDH, but does not identify any NDH official governmental "policy" that was executed resulting in injury to Plaintiff. Moreover, the only improper "custom[s] attributable to the City of Newark" that Plaintiff pleads resulted in violations of § 1981 are Wilson's "domination of AFSCME" for unlawful discriminatory purposes and "the August 2, 2017 and June 7, 2018 resolutions passed by the City of Newark." TAC, ¶ 98. Then in her opposition brief, Plaintiff argues that Defendants' "discriminatory promotions and failure to promote" her is another improper "custom." Pl.'s Opp'n to Defs.' Mot. to Dismiss at 9, ECF No. 87.

None of Plaintiff's allegations of a custom or policy state a viable claim for municipality liability under *Monell*. First, assuming that Wilson's control over the Union constitutes a "custom," it can only arguably be the custom of the Union and not that of the City or NDH. Second, apart from bald cursory conclusions, Plaintiff has not pled any facts to show in what manner the State Court Action settlement unfairly benefitted Eng-Ferrell's husband nor has Plaintiff specified anywhere, whether in her brief or in her pleadings, how Newark's approval of State Court settlements is a "custom" so well-settled that it constitutes law.

Finally, under the *Monell* liability analysis, Plaintiff must also establish causation, that is, a "plausible nexus" or "affirmative link" between the municipality's custom and "specific deprivation of constitutional rights at issue." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 507 (3d Cir.1985). Assuming Plaintiff had even properly pled that the failure to promote her was a "custom," Plaintiff does not allege any facts to adequately establish that any disparate treatment she received was motivated by *racial* bias in deprivation of the rights guaranteed by § 1981. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (Section 1981 "prohibits racial discrimination in the making and enforcement of contracts and property transactions."); *see supra*, n.7. For example, nothing in the TAC supports Plaintiff's conclusory statements that either the discipline she received for failing to attend two mandatory meetings or that the failure to promote her was due to racial animus. *See*

TAC ¶¶ 65, 91. In fact, Plaintiff fails to even identify the race of those co-workers who were not disciplined or of Ms. Vilcant and Ms. Duque, who were promoted instead of her. *See* TAC ¶ 47; ¶¶ 55-56 (indicating that those employees are in fact, non-white). Likewise, other than alleging that Eng-Ferrell's husband is white, Plaintiff does not set forth any facts to suggest that settlement of the State Court Action constituted disparate treatment based on race. *See id.* at ¶ 57. In short, even if Plaintiff had specifically identified an unlawful policy or well-settled custom, Plaintiff has not established a *prima facie* case of intentional racial discrimination. *See* TAC ¶ 87.

Absent an underlying § 1981 violation, Plaintiff's retaliation and hostile work environment claims also fail as a matter of law. *See Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) ("In a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation."); *see also Ocasio v. Lehigh Valley Fam. Health Ctr.*, 368 F. Supp. 2d 370, 376 (E.D. Pa. 2003), *aff'd*, 92 F. App'x 876 (3d Cir. 2004) (noting that prima facie case for hostile work environment includes showing that plaintiff "suffered intentional discrimination because of race").

In sum, Plaintiff has not plead plausibly municipal liability for violation of § 1981 under *Monell.* Defendants' motion to dismiss Plaintiff's §1983 race-based discrimination claims against NDH in Count I is **granted**. Plaintiff's § 1983 claims for violations of rights afforded under § 1981 are **dismissed.**

> 3. *Title VII Claims against NDH for Race-based, Language-based, National Origin Discrimination (Second Cause of Action), Retaliation (Third Cause of Action,[8] and ADEA Claims against all Defendants (Fifth Cause of Action)*

Except for hostile work environment claims,[9] the Court has already dismissed with prejudice Plaintiff's Age Discrimination in Employment Act ("ADEA") and Title VII claims associated with events occurring before February 1, 2018 because those claims occurred more than 300 days prior to the EEOC filing on November 28, 2018. *See* March 25, 2020 and April 16, 2020 Opinions, ECF Nos. 17, 21. Consequently, Defendants move

---

[8] "Title VII of the Civil Rights Act of 1964 forbids employment discrimination against 'any individual' based on that individual's 'race, color, religion, sex, or national origin.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (citing 42 U.S.C. § 2000e–2(a)). "A separate section of the Act—its antiretaliation provision—prohibits an employer from 'discriminat[ing]' against an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Id.* (citing § 2000e–3(a)).

[9] "Hostile work environments, . . . are made up of separate acts; even if the acts are not actionable in their own right, they may collectively comprise a discriminatory employment practice. *Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 657 (E.D. Pa. 2020) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-117 (2002)). "Because a hostile work environment 'cannot be said to occur on any particular day,' plaintiffs may recover for acts that predate the statutory period if the acts are part of a 'continuing violation.'" *Id.* (citing *Morgan*, 536 U.S. at 115-117).

to dismiss as time-barred Title VII claims in the TAC that relate to activity occurring before February 1, 2018, specifically those set forth in ¶¶ 106, 107, 109, 110, 115, and 117.

While Plaintiff's pleading is far from the model of clarity or specificity, the Court must draw all inferences in the light most favorable to Plaintiff on a motion to dismiss. "The Third Circuit has recognized [Title VII] retaliatory hostile work environment claims where an employee is subjected to a hostile work environment in retaliation for having engaged in protected activity." *Smith v. RB Distribution, Inc.,* 498 F. Supp. 3d 645, 661 (E.D. Pa. 2020) (citing *Jensen v. Potter*, 435 F.3d 444, 448–450 (3d Cir. 2006), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)); *see also Komis v. Secretary of the United States Department of Labor*, 918 F.3d 289, 293 (3d Cir. 2019) (recognizing retaliatory hostile environment claims). Thus, Defendants' motion to dismiss is **granted** only to the extent that ¶¶ 106-109, 115, and 117 are not part of Plaintiff's claim of a hostile work environment that continued beyond February 1, 2018. *See TAC ¶¶ 106 (alleging creation of hostile work environment "in the following ways"). Defendants' motion to dismiss is **granted** as to ¶ 110, which pertains to the 2017 distribution of settlement funds and does not appear to have been not pled as part of a hostile work environment claim.

Next, Defendants seek dismissal of any untimely ADEA claims. In ¶¶ 133-141, Plaintiff avers that in violation of the ADEA, 29 U.S.C. § 623(a)(1), which prohibits age discrimination, and 29 U.S.C. § 623(d), which prohibits retaliating against an employee for opposing a prohibited practice, NDH unlawfully promoted Ms. Vilcant to Assistant Chief Inspector in 2016. *Id.* at ¶¶ 135-140. Insofar as Plaintiff is asserting an age or retaliation claim under the ADEA based on the failure to promote her in 2016, that claim was already deemed time-barred and dismissed with prejudice. *See* March 25, 2020 Op. at 3. Accordingly, any age discrimination and retaliation ADEA claims in ¶¶ 133-141 are **dismissed**.

> 4. *Violation of NJLAD as to all Defendants (Fourth Cause of Action) and Retaliation in Violation of NJLAD as to all Defendants (Fifth Cause of Action)*

Defendants move to dismiss as time-barred any NJLAD claims contained in ¶¶ 133-142 relating to Ms. Vilcant's purported discriminatory promotion in 2016. This Court has already dismissed with prejudice NJLAD claims that are based on conduct occurring outside of the applicable two-year statute of limitations except to the extent that that it is part of a continuing hostile work environment. *See* March 25, 2020 Op. at 6. Plaintiff commenced this action on September 6, 2019. Accordingly, absent equitable tolling, which Plaintiff has not argued applies, any viable NJLAD age discrimination and retaliation

claims must have accrued prior to September 6, 2017.[10] Thus, Defendants are correct that Plaintiff's NJLAD age discrimination or retaliation claim based on Ms. Vilcant's 2016 promotion is time-barred. *See* N.J.S.A. 2A:14-2(a). Defendants' motion to dismiss the NJLAD claims in TAC ¶¶ 133-141 is **granted**. Defendants' motion is **denied** as to ¶142 as that appears to relate to Ms. Vilcant's 2021 promotion.

## III.    CONCLUSION

For the reasons noted above, Defendants' motion to dismiss is **granted in part and denied in part**. Defendants' motion to dismiss for lack of subject matter jurisdiction and to dismiss based on *res judicata,* collateral estoppel, or Entire Controversy Doctrine is **denied.** Defendants' motion to dismiss Plaintiff's § 1983 claims for violations of § 1981 is **granted.** Except for allegations that are not part of a continuing hostile work environment, Defendants' motion to dismiss is **granted** as to Plaintiff's Title VII and ADEA claims that relate to activities occurring prior to February 1, 2018 and as to Plaintiff's NJLAD age discrimination and retaliation claims that accrued prior to September 6, 2017. Accordingly, ¶¶ 110 and 133-141 are **dismissed.** Any dismissal of claims granted in this Opinion and accompanying Order is with prejudice. Plaintiff has already had ample opportunity to amend her pleading to allege sufficient facts to support a claim for relief. *See e.g.,* March 25, 2020 Op., ECF No. 17; July 28, 2020 Op., ECF 43; Feb. 10, 2021 Op., ECF No. 50; Oct. 14, 2021 Op., ECF No. 64.

WILLIAM J. MARTINI, U.S.D.J.

**February 16, 2022**

---

[10] Section III.D. of the Court's March 25, 2020 Opinion, ECF No. 17, is amended to state that those allegations that occurred before September 6, 2017 (instead of November 28, 2016) are dismissed with prejudice except to the extent the conduct is part of a hostile work environment continuing beyond that date. *See* N.J.S.A. 2A:14-2 (requiring "action at law" to be commenced within two years of accrual of cause of action). Defendants' contention that claims occurring prior to December 6, 2019 are barred by the two-year statute of limitations is clearly erroneous.