## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GESSY M. THEODORE** | Civ. No. 2:19-17726 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **NEWARK DEPARTMENT OF HEALTH AND COMMUNITY WELLNESS, et al.** | |
| **Defendants.** | |

### WILLIAM J. MARTINI, U.S.D.J.:

In this employment discrimination action, Defendants Newark Department of Health and Community Wellness ("NDH"), Chuen Choi Eng-Ferrell ("Eng-Ferrell"), Mark Wade, and Michael Wilson ("Wilson") (collectively "Defendants"), move for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 145. Plaintiff Gessy M. Theodore ("Plaintiff") did not submit any opposition or a responsive statement of material facts.[1] *See* Local Civ. R. 56.1(a); Fed. R. Civ. P. 56(e)(2). Thus, Defendants' motion has been deemed unopposed. ECF No. 148. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion for summary judgment is **granted**.

### I.    BACKGROUND

Plaintiff filed suit on September 6, 2019. ECF No. 1. At that time, Plaintiff was a 62-year-old woman of Haitian decent. She is a Registered Environmental Health Specialist ("REHS") and has worked at NDH as a health inspector since 1997. Third Amended Complaint ("TAC") ¶ 15, ECF No. 80. Plaintiff contends that, since 2016, her direct

---

[1] After the January 22, 2024 deadline for opposition had passed, on February 7, 2024, Plaintiff requested additional time to find a "descent" [sic] lawyer. ECF No. 146.  However, Plaintiff's current and third counsel entered his appearance on June 28, 2023, *see* ECF No. 138, after Plaintiff's prior attorney withdrew on February 22, 2023. ECF No. 133. In the 4 ½ years that this matter has been pending, there have been three amended complaints filed and multiple motions to amend and motions to dismiss. On numerous occasions, Plaintiff has also failed to comply with Court orders and rules, which resulted in an Order to Show Cause why the Second Amended Complaint should not be dismissed with prejudice as well as imposition of sanctions. *See e.g.,* ECF Nos. 59, 65. The Court will not further delay adjudicating this matter given its protracted procedural history. Given the many prior Opinions already issued in this case, the Court assumes familiarity with the facts of this case.

supervisor, Wilson, an African-American man, has overseen a campaign of discrimination against her and that Defendants also retaliated for certain actions she took in 2016.

On November 28, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on national origin, retaliation, and age under Title VII. Defs.' Stmt. Of Undisputed Material Facts ("DSUMF") ¶ 9, ECF No. 145. Specifically, Plaintiff complained that Wilson commented that she was "too old" to handle the East Ward and thereafter, suspended her for 60 days in retaliation for complaining about Wilson's behavior towards her. EEOC Charge, Ex. N.[2] On June 17, 2019, the EEOC notified Plaintiff of her right to sue under Title VII. TAC, Ex. C.

Plaintiff filed the TAC on December 6, 2021 alleging: 1) retaliation, hostile work environment, and discrimination based on age and national origin pursuant to 42 U.S.C. § 1983 for violation of 42 U.S.C. § 1981 by NDH; 2) discrimination based on race, language, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), by NDH; 3) retaliation in violation of Title VII, 42 U.S.C. § 2000e-3, by NDH; 4) discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD") by all Defendants; and 5) retaliation in violation of NJLAD and age discrimination in violation of Age Discrimination in Employment Act ("ADEA") by all Defendants.

Count I has been dismissed for failure to plausibly plead § 1983 municipal liability. See Feb. 16, 2022 Op., ECF No. 92. Also previously dismissed are the Title VII and ADEA claims that relate to activities occurring prior to February 1, 2018 (300 days prior to EEOC charge) and the NJLAD age discrimination and retaliation claims that accrued prior to September 6, 2017 (2 years before filing of initial Complaint). See March 25, 2020 Op., ECF No. 17; Feb. 16, 2022 Op. See e.g. TAC ¶¶ 19, 107 (reporting Plaintiff for speaking "Creole" in 2016), ¶¶ 41, 135-143 (failing to promote Plaintiff to provisional Assistant Chief Inspector in 2016), ¶ 32 (retaliating for notifying NDH in 2016 about the national origin-based hostilities she faced), ¶¶ 21-23 (retaliating for opposing Wilson's run for office in Federation of State, County, and Municipal Employees, Council 52, AFL-CIO Local 2299 ("Union") election).

Defendants now move for summary judgment on the remaining counts. Apart from non-specific conclusory allegations, see e.g., id. at ¶ 29 (alleging "numerous" age-based comments "[o]ver the past 5 years"); ¶¶ 20, 115 (asserting "continue[d]" harassment by African American coworkers" for opposing Wilson's Union membership), ¶¶ 33, 51 (denying her requests to take continuing education classes and preventing her from learning about promotion opportunities), the only specific events occurring within the statute of limitations that Plaintiff bases her claims on are: 1) the March 2018 disciplinary

---

[2] All references to Exhibits are those attached to the Certification of Claudia Marchese, Esq., ECF No. 145-1, unless otherwise indicated.

proceeding; 2) the City's settlement in 2017 and 2018 of certain salary disputes; and 3) ward reassignment in 2018 and failure to promote her to Health Officer in 2021.

### 1. *March 2018 Disciplinary Proceeding*

On March 2, 2018, Plaintiff received a Preliminary Notice of Disciplinary Action ("PNDA") for refusing to attend mandatory meetings and trainings scheduled between November 2017 and February 2018; she was charged with insubordination and conduct unbecoming a public employee and advised of possible removal. DSUMF ¶ 12; PNDA, Ex. J. Plaintiff alleges other non-Haitain inspectors who did not attend meetings were not disciplined and that Wilson prevented her from challenging disciplinary actions taken against her. TAC ¶¶ 51, 63, 65, 91.

On June 29, 2018, after a hearing was held, Plaintiff's removal was downgraded to a sixty (60) day suspension. DSUMF ¶ 13; Final Notice of Disciplinary Action ("FNDA"), Ex. K. Plaintiff appealed to the New Jersey Office of Administrative Law, but on March 3, 2021, Plaintiff agreed to a 30-day suspension and Newark agreed to pay 30 days of back pay ("FNDA Settlement Agreement"). DMUSF ¶¶ 14-16; FNDA Settlement Agmt., Ex. M. In settling, Plaintiff also consented to waive any rights "she has, had or may have had" to challenge the suspension penalty imposed except such claims that do not stem directly from the disciplinary matter. FNDA Settlement Agmt. ¶ 4. Plaintiff further agreed to be precluded from bringing any type of action "grounded, based upon, stem[ming] from, or related to" the FNDA or the PNDA, *id.* at ¶ 8, and to give up NJLAD or Title VII claims, but did not waive "any pending litigation" against the City. *Id.* at ¶ 17.b.

### 2. *Salary Dispute Settlements*

The Union, on behalf of Plaintiff and 7 other REHS inspectors including Robert Ferrell,[3] filed suit on November 10, 2015 against Newark over a salary dispute ("State Action"). *See* State Action Settlement Agmt., Ex. U. The Union and its counsel negotiated settlement of the suit for $235,000 where each REHS plaintiff would receive back pay calculated based on each plaintiff's actual salary. Attorney Email, Ex. X. Plaintiff received the breakdown of how $25,015.83 owed to her in backpay was determined. Attorney Email, Ex. W. However, she was the only plaintiff who refused to accept the settlement. State Action Counsel Cert. ¶ 6-8, Ex. S; *see* State Action Settlement Agmt. On August 7, 2017, Newark adopted a resolution approving settlement of the State Action with the other 7 plaintiffs. *See* Newark Resolution, Ex. T.

Subsequently, after the Union's attorney was permitted to be relieved as counsel, Plaintiff proceeded *pro se*. State Action Counsel Cert. ¶ 10. On March 4, 2018, Plaintiff's suit was dismissed with prejudice. *Id.* at ¶ 18-19. Plaintiff filed two subsequent motions to reinstate her action, both of which were denied. May 14, 2020 State Action Order, Ex. R; Dec. 14, 2021 State Action Order, Ex. Y. Plaintiff claims she "refused" to settle her claims

---

[3] Mr. Ferrell is the husband of Defendant Eng-Ferrell, the Newark Mayor's Deputy Chief of Staff. *See* TAC, ¶ 13.

because the settlement unfairly benefitted Eng-Ferrell's white husband at the expense of Plaintiff and the other plaintiffs who were all non-white. TAC ¶¶ 57-58, 60-61. Despite her own refusal to settle, Plaintiff still alleges that Wilson, motivated by discriminatory and retaliatory animus, "prevented" her from receiving money in the settlement of the 2015 State Action. *Id.* at ¶¶ 52, 110, 116.

On June 7, 2018, the City approved another resolution to settle a salary dispute with Wilson and one other Union member prior to any litigation. *See* Newark Resolution, Ex. V. Plaintiff claims Wilson coerced the Union to assist him in receiving "pre-litigation settlement" payment from the City from funds that had been allocated to Plaintiff under the August 17, 2017 Resolution approving settlement of the State Court Action. TAC ¶¶ 52-53; June 7, 2018 Newark Resolution, Ex. V.

### 3. *Reassignment and Failure to Promote*

Plaintiff insists that Defendant Wilson told her she was "too old" to service the predominantly Spanish speaking East Ward of Newark and that on or about March 1, 2018, reassigned her to a far smaller area allegedly under the pretext of a language barrier despite her fluency in Spanish. TAC ¶¶ 17-18, 29, 46. Contrary to these pleading allegations, Plaintiff testified at her deposition that has been assigned to the East Ward since 2016 and that she has been sharing that ward with another worker since 2019 when that ward was split. Pl. Dep. 89:12-14, 90:14-19, Ex. C. In July 2022, Plaintiff was temporarily assigned to cover for that inspector who was out on sick leave. *Id.* at 89:16-90:5. Over the course of her career, Plaintiff has been assigned to each of the five wards covered by REHS. *Id.* at 75:12-76:5. Because Plaintiff has been assigned "all over," changing of wards is not an issue. *Id.* at 86:4-23. Ward assignment does not affect Plaintiff's salary, benefits, pension, or scheduled hours or workdays. *Id.* at 76:6-77:6.

Plaintiff also claims Wilson "punished" Plaintiff for complaining in 2016 about hostilities she faced by promoting Berlyne Vilcant and Martha Duque, two younger and less qualified inspectors over her. TAC ¶¶ 32-33, 47. Plaintiff does not specify what promotion Ms. Duque received. Ms. Vilcant was promoted to Health Officer for the City of Newark ("Newark" or "the City") in September 2021. *Id.* at ¶ 44. The position of Health Officer requires a health officers license, which Ms. Vilcant has but Plaintiff does not. New Jersey Job Descriptions, Ex. P; Pl. Dep. 123:10-12; 126:5-8; Ms. Vilcant License, Ex. O. Plaintiff's only professional license is the REHS. Pl. Dep. 77:20-25; Pl. Interrog. Responses ¶ 2, Ex. G. Plaintiff never applied to be the Health Officer and had no interest in that position. Pl. Dep. 123:6-16; Pl. Interrog. Responses ¶ 22, Ex. H.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010). The Court's role at the summary judgment stage "is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

The party moving for summary judgment bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). "[U]nsupported assertions, speculation, or conclusory allegations" are insufficient to defeat a summary judgment motion. *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d. Cir. 2003). "[T]here must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

B. Burden of Proof

Title VII, ADEA, and NJLAD claims based on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Waddell v. Small Tube Prod.*, 799 F.2d 69, 73 (3d Cir. 1986) (Title VII retaliation); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (Title VII and NJLAD retaliation and discrimination); *Monaco v. American Gen'l Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (ADEA and NJLAD age discrimination). The plaintiff carries the initial burden of establishing a *prima facie* case, which in a discrimination suit requires a showing that: (1) she is a member of a protected class; (2) she sought and was qualified for the promotion; (3) she was rejected for the promotion; and (4) the adverse employment action must have occurred "under circumstances that give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, n.6 (1981). An event that may create an inference

of unlawful discrimination is if the employer treats a plaintiff less favorably than similarly situated employees outside his protected class. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999) (citations omitted).

If the plaintiff meets her *prima facie* burden, the defendant may rebut by showing some legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254. If the employer meets this "relatively light burden," *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994), a plaintiff then must prove that the employer's given reason was pretext for discrimination. *Jones*, 198 F.3d at 413. To show pretext and avoid summary judgment, a plaintiff must identify "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (citations omitted). Despite the shifting burdens of production, the plaintiff retains the burden of persuasion at all times by a preponderance of the evidence. *Burdine*, 450 U.S. at 253.

To sustain a *prima facie* retaliation claim, a plaintiff must show: "(1) a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the employer's adverse action." *Jones v. Southeastern Pennsylvania Transp. Auth.*, 796 F.3d 323, 329 (3d Cir. 2015) (citation and quotation marks omitted). As to the causation requirement, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). A causal link may be substantiated by evidence of ongoing antagonism following the protected conduct or the employer giving inconsistent reasons for a particular adverse employment action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). "The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

C. <u>Race, National Origin, Language, and Age Discrimination under Title VII and NJLAD (Second and Fourth Causes of Action); Age Discrimination and Retaliation under ADEA and NJLAD (Third and Fifth Causes of Action)</u>

As a threshold matter, before seeking remedies under Title VII or the ADEA, a plaintiff must exhaust all required administrative remedies. *See Slingland v. Donahoe*, 542 Fed. App'x. 189, 191 (3d Cir. 2013). Notably, Plaintiff did not include charges in her EEOC complaint regarding the salary dispute settlements, nor did she allege violations of the ADEA or a continuing violation. Furthermore, Plaintiff did not file a subsequent EEOC

complaint challenging Ms. Vilcant's 2021 promotion as discriminatory or retaliatory. However, even assuming that these additional claims are "reasonably related to those in the administrative charge," *see Kopko v. Lehigh Valley Health Network*, 776 Fed. App'x. 768, 773 (3d Cir. 2019), and that therefore Plaintiff has exhausted her administrative remedies, as discussed below, there are no genuine issues of material fact for a jury to reasonably find that those actions were motivated by discrimination or retaliation.

First, Plaintiff has not presented any facts that create an inference that the March 2018 disciplinary proceeding and subsequent suspension were motivated by discriminatory or retaliatory animus in violation of Title VII or NJLAD. Plaintiff does not even identify the race or national origin of the other co-workers Plaintiff contends were not disciplined for also failing to attend a mandatory meeting. Even if Plaintiff could meet her initial *prima facie* burden, Plaintiff's insubordination and related charges are a legitimate reason for the 2018 disciplinary action. There is no evidence that the disciplinary action was pretext. Nor does Plaintiff show that Defendants gave inconsistent reasons for her disciplinary proceeding.

Second, Plaintiff has likewise failed to meet her burden to establish that there are any facts upon which a jury could find that either the settlement of the State Action[4] or the "pre-litigation" settlement of Wilson's salary dispute was motivated by discrimination or retaliation. The Court is unaware of any evidence in the record that supports Plaintiff's entirely unsubstantiated assertion that either of the settlements was at her or her non-white coworkers' expense or merely pretext.

Third, there are no disputed material facts upon which a jury could find at trial that Ms. Vilcant's promotion to Health Officer over Plaintiff was due to age discrimination or retaliation. Notwithstanding whether Plaintiff is the most senior REHS in her department as she contends, Plaintiff was not qualified to be Health Officer given that she did not have the requisite license for that position. Moreover, Plaintiff testified that she never even applied for that job and had no interest in that position. There is also no indication that Defendants prevented Plaintiff from applying for the Health Officer position or from learning about promotion opportunities. In fact, the New Jersey Civil Service Commission is required to post all open positions on its website. *See* N.J.A.C. § 4A:4-2.1(a), (b).

Next, contrary to what is pled in the TAC, Plaintiff was not even transferred from her East Ward assignment. According to Plaintiff's own deposition testimony, although Plaintiff has been temporarily assigned to each of the five wards over the course of her career, she has been assigned to the East Ward since 2016. In addition, ward assignment does not affect Plaintiff's salary, benefits, pension, or scheduled hours or workdays.

Finally, general and unsubstantiated allegations are insufficient to defeat a motion

---

[4] The State Action settlement was approved on August 7, 2017, but any individual-event-based NJLAD claim occurring before September 6, 2017 is time-barred.

for summary judgment. For example, no evidence supports Plaintiff's contention that Wilson directed numerous age-based comments at her including that she was "too old," to handle the East Ward, or when in the "past 5 years" he made any such purported comments. Similarly, the record does not reflect that Wilson encouraged and continues to encourage her co-workers to harass her, that he denied Plaintiff's requests to take continuing education classes, or that he continues to summon her to disciplinary meetings without notice of the substance of those meetings and opportunity to prepare or seek counsel. The evidence also fails to show that any such alleged conduct was prompted by improper motive or occurred within the applicable statute of limitations period.

Defendants are entitled to judgment as a matter of law on the Title VII, ADEA, and NJLAD discrimination and retaliation claims.[5]

### D. Hostile Work Environment (Second and Third Causes of Action)

Because Plaintiff has not identified any viable incident of discrimination or retaliation within the statute of limitations, no jury could reasonably find there was a continuing violation. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (holding courts may consider "entire scope of a hostile work environment claim … so long as an act contributing to that hostile environment takes place within the statutory time period"); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). Defendants are entitled to judgment as a matter of law on Plaintiff's hostile work environment claims.

## III.   CONCLUSION

For the reasons noted above, Defendants' motion for summary judgment is **granted**.

WILLIAM J. MARTINI, U.S.D.J.

Dated: March __, 2024

---

[5] Because Plaintiff cannot meet her *prima facie* burden of proof, the Court need not determine whether Plaintiff waived any pending NJLAD and Title VII claims. *See* FNDA Settlement Agmt., ¶ 17.b ("nothing in this agreement shall be considered a waiver of any pending litigation Theodore has against the City").

8